IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| PROJECT VERITAS,<br><br>     Plaintiff,<br><br>v.<br><br>CABLE NEWS NETWORK, INC.,<br><br>     Defendant. | Civil Action No.<br>1:21-cv-01722-SCJ |

**BRIEF SUPPORTING THE MOTION TO DISMISS**

Defendant Cable News Network, Inc. ("CNN") hereby files this brief supporting its Motion to Dismiss the Complaint of Project Veritas ("PV").

## I.   INTRODUCTION

There is no dispute that Project Veritas was kicked off Twitter because it engaged in misconduct that endangered others. There is also no dispute that this occurred during a larger sweep by Twitter against posters of misinformation—and CNN reported about the two together. PV would have this court determine, as a matter of law, that there is a sufficient difference between getting kicked off for posting misinformation and getting kicked off for posting prohibited information to support a defamation claim by a public

1

figure. There is not. Neither the First Amendment nor Rule 12 permit a defamation claim to proceed on such a hairsplitting distinction.

The Complaint fails under basic free speech principles, and its defects are fatal. The commentary—the material aspects of which PV does not challenge as false—is "substantially true" as a matter of state law and also as a matter of constitutional law is not materially false. Additionally, as PV cannot show CNN subjectively doubted the truth of the commentary, PV cannot plausibly allege CNN published the commentary with the constitutionally-required "actual malice." The Complaint should be dismissed now to protect "robust reporting on public figures and events" and "ensur[e] that free speech is not unduly burdened by the necessity of defending against expensive yet groundless litigation." *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016).

## II.   BACKGROUND

### A.   Project Veritas.

PV is a Virginia corporation with its principal place of business in New York. (Compl. at ¶ 16.) As reported in multiple outlets, PV is known for using ambush tactics, undercover "sting" operations, and misleading and deceptive conduct that attempts to surprise, ensnare, and catch subjects making out-of-context comments in furtherance of PV's agenda. A small sample of the

reported conduct includes: 1.) plotting to set up FBI members on "dates" with agents of PV to identify foes of former President Trump; 2.) covertly infiltrating daily CNN newsroom editorial calls and publishing audio of same; 3.) attempting to infiltrate the Washington Post; and 4.) as alleged by researchers at Stanford University, running a "disinformation campaign" during the 2020 election over alleged ballot harvesting. PV's founder James O'Keefe was convicted of entering a federal building under false pretenses, and he and PV were reportedly barred from fundraising in several states.[1]

---

[1] 1.) Thomas Moore, *Project Veritas surveilled government officials to expose anti-Trump sentiments: report*, The Hill (May 13, 2021, 7:48 PM), https://thehill.com/homenews/media/553489-project-veritas-ex-british-spy-surveilled-government-employees-to-expose-anti; 2.) Jeremy Barr, *Project Veritas's James O'Keefe crashed a private CNN teleconference. CNN says he may have broken the law*, The Washington Post (Dec. 3, 2020, 6:00AM), https://www.washingtonpost.com/media/2020/12/03/james-okeefe-cnn-recording-law/; 3.) Shawn Boburg, *A woman approached The Post with dramatic – and false – tale about Roy Moore. She appears to be part of undercover sting operation*, The Washington Post (Nov. 27, 2017), https://www.washingtonpost.com/investigations/a-woman-approached-the-post-with-dramatic--and-false--tale-about-roy-moore-sje-appears-to-be-part-of-undercover-sting-operation/2017/11/27/0c2e335a-cfb6-11e7-9d3a-bcbe2af58c3a_story.html; 4.) Isabella Garcia-Camargo, *Project Veritas #BallotHarvesting Amplification*, Election Integrity Partnership (Sep. 29, 2020), https://www.eipartnership.net/rapid-response/project-veritas-ballotharvesting; 5.) Department of Justice Press Release, *Four Men Plead Guilty to Entering Federal Property Under False Pretenses*, Federal Bureau of Investigation (May 26, 2010), https://web.archive.org/web/20100531174024/http://neworleans.fbi.gov/dojpressrel/pressrel10/no052610b.htm; 6.) Shawn Boburg, *Florida bars Project Veritas founder James O'Keefe from fundraising due to criminal conviction*, The Washington

**B.     Twitter Bans Project Veritas.**

On February 11, 2021, social media platform Twitter "banned" PV by permanently suspending PV's Twitter account for posting prohibited information. (Compl. at ¶¶ 5, 27.) Twitter stated PV "repeatedly" violated "policies prohibiting the sharing – or threats of sharing – of other people's private information without consent." (*Id*. at ¶ 2.) Twitter's private information policy is attached as Exhibit 1 to the Declaration of Eric P. Schroeder (Exhibit A hereto). *See Hoffman-Pugh v. Ramsey*, 312 F.3d 1222, 1225 (11th Cir. 2002) (district court may consider material referenced in the Complaint and central to the plaintiff's claims). According to that policy:

Sharing someone's private information online without their

Post (Dec. 8, 2017), https://www.washingtonpost.com/investigations/florida-bars-project-veritas-founder-james-okeefe-from-fundraising-due-to-criminal-conviction/2017/12/08/f20a05c4-dc41-11e7-a841-2066faf731ef_story.html.

The Court may take judicial notice of these news articles in considering whether PV is a "public figure" for purposes of the actual malice standard. *Biro v. Condé Nast*, 963 F. Supp. 2d 255, 271 n.9 (S.D.N.Y. 2013) (taking notice of published scientific and news articles and broadcasts in determining plaintiff was a public figure). CNN does not rely on the truth of those articles for purposes of establishing that PV has failed to state a claim. *See U.S. ex rel Osheroff v. Humana Inc.*, 776 F.3d 805, 811 n.4 (11th Cir. 2015) (court may take judicial notice of newspaper articles on motion to dismiss "for the limited purpose of determining which statements the documents contain")*; Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital Mgmt. L.P.*, 435 F.3d 396, 401 n.15 (3d Cir. 2006) (affirming district court's judicial notice of news articles which "serve only to indicate what was in the public realm at the time, not whether the contents of those articles were in fact true").

4

permission, **sometimes called doxxing**, is a breach of their privacy and of the Twitter Rules . . . .  Sharing private information can pose serious safety and security risks for those affected and can lead to physical, emotional, and financial hardship. . . . ***[Twitter's] primary aim is to protect individuals from coming to physical harm as a result of their information being shared*** . . . .  [Twitter] also factor[s] in the intent of the person sharing the information. For example, if we believe that someone is sharing information with an abusive intent, or to harass or encourage others to harass another person, we will take action. . . .  If you violate this policy again after your first warning, your account will be permanently suspended.

(Hereinafter, the "Anti-Doxxing Prohibition" (emphasis added).) PV disputes Twitter's reason for suspending its account, but acknowledges that Twitter cited the Anti-Doxxing Prohibition for its ban. (Compl. at ¶¶ 27-36.)

## C.   CNN Reports The Ban And The Broader Spread Of Misinformation On Social Media.

On February 11, 2021, CNN Business reported that PV's ban "followed what a Twitter spokesperson described . . . as repeated violations of the platform's policies prohibiting sharing — or threats of sharing — other people's private information without consent." (Compl. at ¶ 31.) CNN anchor and correspondent Ana Cabrera used substantially identical language while reporting the event on her Twitter account on the same day (the "Tweet"), attached as Exhibit 2 to Ex. A hereto. (Compl. at ¶¶ 2, 6, 37.)

On February 14, 2021, during a regular telecast of "CNN Newsroom," Ms. Cabrera introduced a segment concerning the spread of misinformation

on social media, as related to QAnon extremist groups and the January 6, 2021 insurrection at the United States Capitol. During the segment, Ms. Cabrera and CNN senior correspondent Brian Stelter offered the commentary (the "Commentary") that is the subject of this lawsuit:

> CABRERA: And of course social media plays such a huge role here. We're starting to see companies crack down to try to stop the spread of misinformation and to hold some people who are spreading accountable, Brian. For example Twitter has suspended the account of Project Veritas, a conservative activist organization, at least that's how they couch themselves with followers including Donald Trump Jr., Eric Trump, but this is part of a much broader crackdown as we mentioned by social media giants on accounts that are promoting misinformation.

> STELTER: Yes. And these companies' policies are changing as time goes on, becoming more strict as time goes on, and as a result groups like Project Veritas, no connection to QAnon, but Project Veritas, a very controversial conservative group, got swept up in a Twitter policy by violating multiple rules on the site, rules that to be honest did not exist five years ago. So it can be confusing for people as these platforms change and then enforce the rules more severely than before to know what is allowed and what is not allowed.

(Exhibit 3 to Ex. A ("Transcript").[2] *See* Compl. at ¶¶ 39-40.) Thus, fairly read in context, the Commentary's focus is on the larger context of social media companies strictly enforcing their policies. In that context, Ms. Cabrera

---

[2] The Court may consider the Transcript on this Motion as it is referenced in the Complaint and central to PV's claims. *Hoffman-Pugh*, 312 F.3d at 1225. CNN is also submitting a copy of the video segment, as Ex. 4 to Ex. A, through its contemporaneous Notice of Manual Filing.

stated that Twitter's ban of PV's account was an "example" of companies "crack[ing] down to try to stop the spread of misinformation." Mr. Stelter's statements further contextualize the Twitter ban, i.e., "companies' policies are changing . . . becoming more strict as time goes on," citing PV only as a group which "got swept up in a Twitter policy by violating multiple rules . . . [that] did not exist 5 years ago." The stated reason for Twitter's ban is not mentioned, and it is not material to the focus of the Commentary.

### D. Project Veritas Publicizes This Lawsuit.

Project Veritas has used this lawsuit as a vehicle to publicize itself and fundraise. In addition to publicizing the lawsuit on its website, PV published a music video about the Twitter ban and this lawsuit (and soliciting other defamation plaintiffs), and published a video accosting Ms. Cabrera, threatening to depose her and also trying to recruit her as a "whistleblower."[3]

---

[3] 1.) *Breaking [Video]: Project Veritas SUES CNN After Network Host Said PV's Twitter Ban Was Result Of 'Misinformation' Crackdown . . . 'If You Think Defaming Us is Without Consequence, Think Again'*, Project Veritas (April. 26, 2021), https://www.projectveritas.com/news/breaking-video-project-veritas-sues-cnn-after-network-host-said-pvs-twitter/; 2.) Project Veritas, *Project Veritas – OLIGARCHY (Official Video)*, facebook (May 3, 2021), https://www.facebook.com/ProjectVeritas/posts/james-okeefe-presents-oligarchy-an-anthem-for-everyone-who-has-ever-been-defamed/4467323596686457/; 3.) Project Veritas, *Ana Cabrera #DeposeCNN*, facebook (April 27, 2021), https://www.facebook.com/ProjectVeritas/videos/1123068911493551/.

PV seeks unspecified compensatory and general damages, over $1,000,000 in punitive damages, and an injunction preventing CNN "from further disseminating" the Commentary. It does not plead special damages.

## III.  LEGAL STANDARD

### A.  Rule 12(b)(6) Standard.

A defamation plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," construing allegations in the plaintiff's favor. *Michel*, 816 F.3d at 694 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court need not accept "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). At the Rule 12 stage, the Court "primarily consider[s] the allegations in the complaint" but "is not [always] limited to the four corners of the complaint." *Halmos v. Bomardier Aerospace Corp.*, 404 Fed. Appx 376 (11th Cir. 2010) (quotations omitted) (citing *Long v. Slaton*, 508 F.3d 576, 578 n.3 (11th Cir. 2007)). For example, the Court may consider material that is referenced in

---

*See supra* n.1. *See also Doron Precision Sys., Inc. v. FAAC, Inc.*, 423 F. Supp.2d 173, 179 n.8 (S.D.N.Y. 2006) ("For purposes of a 12(b)(6) motion to dismiss, a court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and 'it is capable of accurate and ready determination.'").

the Complaint and central to PV's claims, *Hoffman-Pugh*, 312 F.3d at 1225, and "may take judicial notice of certain facts [where proper] without converting a motion to dismiss into a motion for summary judgment." *Univ. Express, Inc. v. U.S. S.E.C.*, 177 Fed. Appx. 52, 53 (11th Cir. 2006).

**B.    General Standard For Defamation Actions.**

As recently discussed by Judge Brown of this District under similar circumstances, New York law applies to PV's defamation claim under Georgia's choice-of-law rules because PV's principal place of business is in New York. *Donald J. Trump for President, Inc. v. CNN Broadcasting, Inc.*, 500 F. Supp. 3d 1349, 1353-54 (N.D. Ga. 2020) (New York law applied to Virginia corporation's defamation claim when its principal place of business was New York). Georgia follows the rule of *lex loci delicti*, which applies the substantive law of the state where the plaintiff sustained the injury; in multistate defamation claims by corporate plaintiffs, this is the location of plaintiff's principal place of business. *Id*. In this case, that place is New York.

"To prove [defamation] under New York law, a plaintiff must establish five elements: '(1) a . . . defamatory statement of and concerning the plaintiff; (2) publication to a third party; (3) fault; (4) falsity of the defamatory statement; and (5) special damages or per se actionability.'" *Id*. at 1354 (quoting *Palin v. New York Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019)).

9

"The words must be construed in the context of the entire statement or publication as a whole, tested against the understanding of the average reader . . . ." *Aronson v. Wiersma*, 65 N.Y. 2d 592, 594 (1985). New York puts "particular value" in resolving defamation claims at the pleadings stage, "so as not to protract litigation through discovery and trial and thereby chill the exercise of constitutionally protected freedoms." *Armstrong v. Simon & Schuster, Inc.*, 85 N.Y.2d 373, 379 (1995).

The First Amendment also places two important burdens on PV. First, as this case involves speech about matters of public concern and/or PV is undoubtedly a public figure, PV must prove the allegedly defamatory statements are *materially* false by clear and convincing evidence. *See, e.g., Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776 (1986). *See also Broker's Choice of America, Inc. v. NBC Universal, Inc.,* 861 F.3d 1081, 1110 (10th Cir. 2017) ("The First Amendment . . .  requires the plaintiff to prove material falsity . . . ."; discussing precedent); *Wentz v. Project Veritas*, 2019 WL 1716024 at *4 (M.D. Fla. April 16, 2019) (noting that "[a]ccording to the U.S. Supreme Court . . . falsity only exists if the publication is substantially and materially false"). Second, PV must also meet the "actual malice" standard and set forth facts plausibly showing CNN "actually entertained

serious doubts as to the veracity of the published account, or was highly

aware that the account was probably false." *Michel*, 816 F.3d at 703.[4]

## IV.   ARGUMENT AND CITATION OF AUTHORITY

The Complaint does not identify a specific, false statement of fact.

Instead, PV combines several sentences by Ms. Cabrera, and alleges the

passage "stat[ed] that Twitter banned PV for 'promoting misinformation.'"

This statement, however, does not appear in the Commentary – it is PV's

interpretation of the passage. (*Compare* Compl., ¶¶ 8 & 48 *with* Ex. 3 & 4.)

As such, PV alleges a theory of defamation *by implication*, a type of

defamation claim subject to specific rules under New York law (which the

Complaint does not meet).[5] Yet even assuming PV properly pleaded a

defamation by implication claim, the Complaint must be dismissed as the

_____

[4] Similarly, when statements are "arguably within the sphere of legitimate public concern," New York requires showing that the publisher "acted in a grossly irresponsible manner." *Love v. William Morrow & Co., Inc.*, 597 N.Y.S.2d 424, 426-27 (N.Y. App. Div. 1993) (quotations omitted).

[5] Under New York law, PV must meet "rigorous" pleading requirements to state a claim of defamation by implication. *See Biro*, 883 F. Supp. 2d 441, 466 (S.D.N.Y. 2012) ("[W]here a plaintiff asserts a defamation claim based not on any alleged falsity of the statements themselves, but on an alleged defamatory implication that could be derived from the unchallenged facts, the Court will require an 'especially rigorous showing' that (1) the language may be reasonably read to impart the false innuendo, and (2) the author intends or endorses the inference.").

Commentary is substantially true, not materially false, and PV cannot plausibly allege CNN acted with actual malice.

## A. The Commentary Is Substantially True And Not Materially False.

"[T]ruth is an absolute, unqualified defense" to defamation under New York law. *Guccione v. Hustler Magazine, Inc.*, 800 F.2d 298, 301 (2d Cir. 1986). To encourage free discourse, New York courts focus on whether a statement is "substantially true" as understood by the average person in the full context of the communication, and not on the veracity of certain statements taken with surgical precision. Thus, if "an allegedly defamatory statement is 'substantially true,'" based on an average reader's understanding of the publication as a whole, "a claim of libel is 'legally insufficient and . . . should [be] dismissed.'" *Biro*, 883 F. Supp. 2d at 457-58. *See Franklin v. Daily Holdings, Inc.*, 135 A.D.3d 87, 94 (N.Y. App. Div. 2015) (plaintiff must show statement is "substantially false"); *Miller v. Journal-News*, 211 A.D.2d 626, 627 (N.Y. App. Div. 1995).[6] Under New York law, "it is not necessary to demonstrate complete accuracy . . . [i]t is only necessary that

---

[6] *See Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1228 (7th Cir. 1998) (Posner, J.) ("The rule of substantial truth is based on a recognition that falsehoods which do no *incremental* damage to the plaintiff's reputation do not injure the only interest that the law of defamation protects", emphasis in original).

the gist or substance of the challenged statement be true." *Printers II, Inc. v. Professionals Publishing, Inc.,* 784 F.2d 141, 146 (2d Cir. 1986). Moreover, a statement is substantially true if it produces no worse an effect on the mind of a reason than the truth pertinent to the allegation. *See also Guccione*, 800 F.2d at 302.

In addition, as the Commentary addresses a matter of public concern and PV is a public figure, PV must also show "material" falsity as a matter of constitutional law. *E.g.*, *Masson v. New Yorker Magazine, Inc.,* 501 U.S. 496, 516-17 (1991) (falsity "overlooks minor inaccuracies and concentrates upon substantial truth," alleged falsity is not actionable unless "alteration results in a material change in the meaning conveyed by the statement"). Although the inquiry as to whether a statement is "substantially true" or materially false is similar, the burden of proof to establish material falsity is squarely on the plaintiff and requires the highest level of proof—clear and convincing evidence. *See Hepps*, 475 U.S. at 776. A plaintiff in such a circumstance must be able to show with clear and convincing evidence that the communication "would have a different effect on the . . . reader from that which the pleaded truth would have produced." *See Masson*, 501 U.S. at 516-17 (quoting Sack, LIBEL, SLANDER, AND RELATED PROBLEMS 138 (1980)). "[T]he alleged misstatement must be likely to cause reasonable people to think 'significantly

less favorably' about the plaintiff if they knew the truth; [it] is not actionable if the comparative harm to plaintiff's reputation is real but only modest." *Bustos v. A&E Television Networks*, 646 F.3d 762, 765 (10th Cir. 2011) (Gorsuch, J.). Any doubt as to whether a statement is materially false should be resolved by erring on the side of dismissing the claim. *Liberty Lobby, Inc. v. Dow Jones & Co.,* 838 F.2d 1287, 1292 (D.C. Cir. 1988) (citing *Hepps*, 475 U.S. at 776) ("Where the question of truth or falsity is a close one, a court should err on the side of non-actionability.").

Here, the Commentary is substantially true under state law, and PV also cannot meet its higher burden of showing material falsity.

PV admits Twitter stated that it suspended PV's account for "repeated" violations of Twitter's "policies" prohibiting doxxing and "threats of sharing people's private information without consent." (Compl. at ¶ 27.) PV also does not dispute that the suspension occurred amid "a much broader crackdown . . . by social media giants on accounts that are promoting misinformation." Finally, PV does not contest that the ban is an "example" of that "crackdown." For these reasons alone, the Commentary is substantially true, and the Court should dismiss the claim. *See Monge v. Madison County Record, Inc.*, 802 F. Supp. 2d 1327, 1333-35 (N.D. Ga. 2011) (Jones, J.) (dismissing defamation claim as statement read in context was "not defamatory because it is true";

14

Georgia law). *Cf. Nichols v. Moore*, 396 F. Supp. 2d 783, 792 (E.D. Mich. 2005) (statement plaintiff was arrested "in connection with" Oklahoma City bombing was "substantially true" even if plaintiff was not charged with participating), *aff'd* 477 F.3d 396 (6th Cir. 2007).

Moreover, PV's theory of falsity does not change the substantial truth analysis and regardless is certainly not sufficient to state a claim under the higher constitutional standard of material falsity. PV complains the Commentary implied Twitter banned PV for "promoting misinformation" instead of PV's "truth" – that "Twitter claimed [PV] disseminated private information without consent." (Compl. at ¶ 52.)[7] In other words, the Complaint asks the Court to rule that CNN defamed PV by *not* including the detail that Twitter stated that it banned PV for repeatedly violating its Anti-Doxxing Prohibition.

Even assuming the Commentary implies PV was banned due to "misinformation," PV's hyper-technical focus on why it was banned by

---

[7] As PV's claim is based on an *implication*, PV must make an "especially rigorous showing" that the Commentary can be "reasonably read to impart the false innuendo" and CNN "affirmatively suggest[ed] that [it] intend[ed] or endors[ed] that inference." *Biro*, 883 F. Supp. 2d at 464-66. While PV pleaded that CNN knew the identified statements in the Commentary were false due to Ms. Cabrera's previous Tweet, it has not pleaded that the Commentary "affirmatively . . . intended or endorsed" its preferred inference that Twitter banned PV due to "misinformation," providing another basis for dismissal.

Twitter is insufficient to support a defamation claim. The reason Twitter banned PV is immaterial in the context of the Commentary, as the effect on the viewer is exactly the same whether it is mentioned or not, and as a matter of law PV will not be able to establish by clear and convincing evidence that the Commentary is materially false. To the average viewer, there is no material difference from a reputational standpoint between being banned for "misinformation" and being banned for posting prohibited information (or threatening to share it). Both acts are disgraceful and potentially harmful, and the gist and sting of the Commentary remains the same whether or not PV's asserted truth is included. Twitter did ban PV, the ban was for repeated violations of Twitter's policies, and it occurred amid a broader "crackdown" by social media companies trying to stop the spread of misinformation. The Commentary is therefore not actionable because it produces "no worse an effect on the mind of a reader than [PV's alleged] truth . . . ." *Guccione*, 800 F.2d at 302.

Incredibly, PV argues that "if CNN had reported the truth"—i.e., if CNN had clarified PV was banned for repeatedly violating Twitter's Anti-Doxxing Prohibition—PV's reputation "would not have been falsely maligned". (Compl. at ¶ 52.) But inserting PV's desired truth into the Commentary (in *italics* below) belies that assertion: "For example Twitter has

suspended the account of Project Veritas *for violating a policy against doxxing* . . . , but this is part of a much broader crackdown as we mentioned by social media giants on accounts that are promoting misinformation." *See Guccione*, 800 F.2d at 302 (account substantially true when substituting the precise truth into the communication "call[ed] attention" to additional damaging details the original account omitted).

The gist of the Commentary – that Twitter suspended PV's account amid a broader crackdown by social media sites – remains the same, as the focus of the Commentary was on social media's "crackdown" to prevent misinformation and not on the details of Twitter's action against PV. *See Haynes,* 8 F.3d at 1228 (dismissal justified where "details that, while not trivial, would not if corrected have altered the picture that the true facts paint"; also "Falsehoods that do not harm the plaintiff's reputation more than a full recital of the true facts about him would do are thus not actionable"). By putting Ms. Cabrera's specific comments in context, Mr. Stelter's statement confirms that the larger gist and sting of the Commentary is that PV was banned as part of a broader phenomenon of social media companies more strictly enforcing their rules in a way that was unforeseen several years ago – i.e., PV "got swept up in a Twitter policy by violating multiple rules . . . that did not exist 5 years ago." The exact reason stated by Twitter for

suspending the PV account is not material to the broader context of the Commentary; omitting this reason does not make the Commentary "false."

Finally, comparing the specific alleged falsity with the acknowledged truth shows the Commentary had the same, if not lesser, effect on the viewer from a reputational standpoint. The common definition of "misinformation" is "false information that is spread, regardless of whether there is intent to mislead." https://www.dictionary.com/browse/misinformation. PV's "truth" is much worse: Project Veritas was banned for *repeated* instances of violating Twitter's "policies" prohibiting sharing or "threatening to share" private information, thus endangering individual safety and enabling harassment.

In sum, the "full truth" Plaintiff wanted CNN to report would have no different effect on the viewer than what the Commentary states; and the presence or absence of Twitter's stated reason for the ban within the Commentary does not materially change its gist, sum, or substance. The Commentary is therefore substantially true, not materially false, and not actionable.

## B.    The Complaint Does Not Plausibly Allege Actual Malice.

A second, independent reason for dismissing the Complaint is that it does not plausibly allege CNN acted with actual malice.

Actual malice is a high burden imposed by the First Amendment, and requires PV to plausibly allege CNN "actually entertained serious doubts" about the Commentary or that CNN "was highly aware that the account was probably false." *Michel*, 816 F.3d at 702-03 (citing *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968); adopting "plausibility" standard for allegations of actual malice).[8] As such, PV must allege facts that show the Commentary was "fabricated by the defendants, wholly imaginary . . . inherently improbable, or obviously worthy of doubt." *Michel,* 816 F.3d at 705. As to fault, PV must allege "more than a departure from reasonable journalistic standards." *Id.* at 703 (cit. omitted).

As an initial matter, PV is unquestionably a public figure—whether in general or simply for purposes of its defamation claim—and the actual malice standard applies here. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 352 (1974) (person becomes public figure when they "thrust himself into the vortex of [the] public issue [and] engage the public's attention in an attempt to influence its outcome"); *Michel*, 816 F.3d at 702 ("[W]hether an individual is a

---

[8] The actual malice standard furthers the "powerful interest in ensuring that free speech is not unduly burdened by . . . expensive yet groundless litigation" and allows the "breathing space" needed to "ensure robust reporting on public figures and events." *Michel*, 816 F.3d at 702. As such, public figures must plausibly plead actual malice lest the costs of litigation "chill free speech nearly as effectively as the absence of the actual malice standard." *Id.*

public figure . . . is a question of law for the court to decide."). PV essentially admits it is a public figure, as it touts its own investigative activities and its purported success in the same. (Compl. at ¶¶ 20-24, 51.) The Court may also take judicial notice of PV's actions in the public arena, including its public statements about the suspension and this lawsuit. *See supra* n. 1 & 3 above. Undoubtedly, PV has had "ready access to the media for many years" and has "invited public scrutiny and comment," the hallmark of a public figure. *Silvester v. Am. Broad. Cos., Inc.*, 839 F.2d 1491, 1494-97 (11th Cir. 1988).

The linchpin of PV's actual malice theory is Ms. Cabrera's February 11, 2021 Tweet concerning "Twitter's stated basis for the Project Veritas ban." (Compl. at ¶¶ 2, 6, 50.) PV contends this Tweet "contradict[s]" the claim "that Twitter banned Project Veritas for 'promoting misinformation'" and demonstrates the latter statement was "known by CNN to be false or . . . made with reckless disregard of the truth . . . ." (*Id.* at ¶ 43. *See also* ¶¶ 1, 44, 48.) In reality, this theory alleges, at most, a foot fault—the (at-worst, inadvertent) omission of an immaterial detail, i.e., the specific reason for PV's ban when both Ms. Cabrera and Mr. Stelter were discussing a broader story on the recent social media "crackdown" of enforcing rules to try to stop the spread of misinformation. This theory does not identify a material falsity "fabricated" by Ms. Cabrera (or Mr. Stelter, who focuses his analysis of the

"crackdown" on general rules, not the specific rules at issue), and does not plausibly allege actual malice. *See Air Wisconsin Airlines Corp. v. Hoeper*, 571 U.S. 237, 247 (2014) (requiring "more than mere falsity to establish actual malice: The falsity must be 'material.'"); *Berisha v. Lawson*, 973 F.3d 1304, 1315 (11th Cir. 2020) (falsity of "minor detail[s]" did not suggest author "harbored serious doubts" about "broader depiction" of plaintiff).

Moreover, Ms. Cabrera's Tweet is not evidence of actual malice at all. It is not enough to plead that Ms. Cabrera reported A first and then B later; instead, Ms. Cabrera must have subjectively known that her prior Tweet ("A") *directly contradicted* her later Commentary ("B"). It did not. Specifically, Ms. Cabrera's Tweet reported Twitter's stated reason for PV's ban. (Ex. 3.) Later, and without contradicting the Tweet, Ms. Cabrera and Mr. Stelter reported a separate story on social media actors enforcing their rules to stop the spread of "misinformation" and cited PV's ban as "part of a much broader crackdown."[9] (Ex. 4.) The former reports the *reasons* for PV's ban; meanwhile,

---

[9]  CNN was not alone in this observation: days before, Politico.com stated the "move against the conservative activist organization comes amid a broader crackdown by the social media giant on those promoting misinformation." Anna Kambhampaty, *Twitter suspends Project Veritas account*, Politico (Feb. 11, 2021), https://www.politico.com/news/2021/02/11/project-veritas-suspended-twitter-468748. The Court can consider this news article as it is not submitted for the truth of the identified statement, but rather to show it was published before the Commentary aired. *See supra* n. 1.

the latter Commentary addressed a separate trend into which PV's ban fits, i.e., a crackdown (regardless of the specific mechanism facilitating such a crackdown) on accounts promoting misinformation. The Tweet does not contradict the Commentary, and both can be—and, in fact, are—true at the same time. *See Trump*, 500 F. Supp. 3d at 1358.

Ms. Cabera's previous Tweet fails to demonstrate that she did not *subjectively believe* that (or that she "actually entertained serious doubts" about whether) Twitter's ban of PV was an "example" or part of a broader "crackdown" on sources of misinformation. The Complaint does not allege (nor could it) that Ms. Cabrera did not believe that PV promoted misinformation, that Twitter's enforcement of its rules (even if for doxxing) was part of the broader trend of social media companies "cracking down" on sources of misinformation, or that PV's ban was an "example" of such a crackdown. As such, PV's cite to Ms. Cabrera's previous Tweet does not show actual malice; instead, at most, PV is using the Tweet to attack the "reliability" of Ms. Cabrera's views and whether the Commentary is true, conflating its argument regarding falsity with establishing Ms. Cabrera's subjective belief in what she stated. *See, e.g.*, *Turner v. Wells*, 879 F.3d 1254, 1269 (11th Cir. 2018) (report's alleged failure to analyze certain information in law firm's report on NFL coach's alleged involvement in bullying incidents

did not establish actual malice; affirming dismissal). *Cf. BYD Company Ltd. v. VICE Media LLC*, 2021 WL 1225918 at *7 (S.D.N.Y. Mar. 31, 2021) (actual malice argument conflated falsity with subjective knowledge of same; "inaccuracy itself will not demonstrate 'actual malice'", granting dismissal).[10]

This distinction is important; while courts have sometimes found a plausible inference of actual malice in the case of a direct contradiction, such inferences simply do not arise when the prior stories "do not touch *directly* on" the purportedly defamatory statements. *See Trump*, 500 F. Supp. 3d at 1358 (emphasis added) (distinguishing *Palin v. New York Times Co.*, 940 F.3d 804 (2d Cir. 2019)). *See also Lovingood v. Discovery Commc'ns, Inc.*, 800 Fed. Appx. 840, 850 (11th Cir. 2020) ("[P]laintiff must point to evidence that the defendant had real, subjective suspicions about the veracity of the statement . . . ."); *Michel*, 816 F.3d at 704-06 (holding that evidence defendant knew plaintiff was not a board member of a foundation did not show defendant

---

[10] By disputing Twitter's stated reason for the ban, PV underscores the point. PV claims "nothing in [PV]'s tweets" leading to the ban was "private, i.e. confidential," and suggests Twitter had other reasons for banning PV. (Compl. at ¶¶ 25-36.) This factual attack highlights two things: 1.) whether PV's ban was "part of a much broader crackdown" on accounts promoting misinformation is not subject to empirical verification; and 2.) the ban was, instead, an action ripe for discussion and subject to multiple interpretations. *See Time, Inc. v. Pape*, 401 U.S. 279, 290 (1971) (publication reflecting "one of a number of possible rational interpretations" of an event "that bristled with ambiguities" will not support plausible actual malice claim).

acted with actual malice by saying the foundation was plaintiff's "own"). Prior knowledge of related but ultimately separate facts does not show that a later interpretation of events in a different context "was fabricated by the defendants, wholly imaginary . . . improbable, or obviously worthy of doubt." *Michel*, 816 F.3d at 705. And in this case, Ms. Cabrera's previous Tweet does not show she knowingly fabricated or "entertained serious doubts" about her statement that Twitter's ban of PV was an example of a larger trend of social media companies "cracking down" by enforcing their rules against purveyors of misinformation, as discussed above.

PV's remaining allegations concerning CNN's state-of-mind are largely conclusory, and fall into one or more of the categories that cannot support a plausible claim for actual malice, i.e.: (1) conclusory allegations that CNN knew the Commentary was false (Compl. at ¶¶ 2, 9, 13, 43, 53-54, 59); (2) generalized allegations of purported bias or ill will (*Id*. at ¶¶ 35-36 & 51); and (3) generalized allegations that CNN supposedly failed to adhere to journalistic standards (Id., ¶ 54). These allegations do not plausibly allege actual malice. *See, e.g., Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 666 (1989) ("[T]he actual malice standard is not satisfied . . .[by] ill will or 'malice' in the ordinary sense of the term."); *Michel*, 816 F.3d at 703-704 (conclusory allegations cannot establish actual malice at pleading stage);

*Dunn v. Air Line Pilots Ass'n*, 193 F.3d 1185, 1198 n.17 (11th Cir. 1999)

(author's motives "play[] no role in determining . . . 'actual malice'"); *Smith v.*

*Turner*, 764 F. Supp. 632, 642 (N.D.Ga. 1991) ("[A]llegations and evidence

concerning motives, reasonableness, and the lack or inadequacy of prior

investigation cannot establish actual malice in the constitutional sense.").

The sole remaining non-conclusory allegation regarding actual malice relates

to CNN's refusal to comply with PV's retraction demand. (Compl. at ¶¶ 12,

45-46.) This also cannot demonstrate actual malice. *Hunt v. Liberty Lobby*,

720 F.2d 631, 643 n.19 (11th Cir. 1983) ("[T]he failure to retract or correct a

falsehood does not prove actual malice.").

PV's factual allegations are not capable of raising a plausible inference

of actual malice. The Complaint should be dismissed.

## CONCLUSION

The Motion to Dismiss should be GRANTED WITH PREJUDICE.

Respectfully submitted this 15th day of June, 2021.

*/s/ Eric P. Schroeder*

BRYAN CAVE LEIGHTON PAISNER LLP
Eric P. Schroeder (Ga. Bar 629880)
Brian M. Underwood, Jr. (Ga. Bar 804091)
One Atlantic Center, 14th Floor
1201 West Peachtree Street, NW
Atlanta, Georgia 30309

Telephone:    404-572-6600
Facsimile:    404-572-6999
eric.schroeder@bclplaw.com
brian.underwood@bclplaw.com

*Counsel for Defendant CNN*

## <u>Local Rule 7.1(D) Certification of Compliance</u>

I hereby certify that the foregoing pleading has been prepared with Century Schoolbook font, 13 point, one of the font and point selections approved by the Court in L.R. 5.1, N.D. Ga.

This 15th day of June, 2021.

> */s/ Eric P. Schroeder*
> Eric P. Schroeder
> Ga. Bar 629880

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this date, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send email notification of such filing to all counsel of record.

This 15th day of June, 2021.

> */s/ Eric P. Schroeder*
> Eric P. Schroeder
> Ga. Bar 629880