IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| PROJECT VERITAS,<br><br>    Plaintiff,<br><br>v.<br><br>CABLE NEWS NETWORK, INC.,<br><br>    Defendant. | Civil Action No.<br>1:21-cv-01722-SCJ |

**REPLY IN SUPPORT OF THE MOTION TO DISMISS**

Project Veritas' ("PV") response (ECF No. 22 / "Resp.") to CNN's motion to dismiss is designed largely for public consumption. The brief, full of bluster and misleading tropes spinning PV as an underdog purveyor of the "truth," is good PR for PV's continued fundraising off this lawsuit but fails to explain why its Complaint should not be dismissed.

PV's response confirms its singularly narrow claim of defamation: it claims that Ana Cabrera stated Twitter banned PV for violating Twitter's policy against misinformation despite previously reporting PV's ban was for repeated violations of Twitter's anti-doxxing policy and that such statement defamed PV. Of course, Ms. Cabrera did not say that that Twitter banned PV for violating Twitter's policy against misinformation. Yet, even if she had,

1

neither the First Amendment nor Rule 12 permits a public figure to maintain a defamation claim based on the distinction between getting kicked off Twitter for violating policies prohibiting misinformation and getting kicked off Twitter for violating policies prohibiting posting private information. This is particularly true when, as here, actual malice cannot be shown.

The First Amendment and New York defamation law demands and provides ample "breathing space" for CNN's Commentary, as "debate on public issues should be uninhibited, robust, and wide-open, and [] it may well include vehement, caustic, and [] unpleasantly sharp attacks." *New York Times v. Sullivan*, 376 U.S. 254, 270 (1964). This case should be dismissed now, so "free speech is not unduly burdened by . . . expensive yet groundless litigation." *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016).

I.  **PV'S "FACTS"**

PV does not contest the authenticity of either the video or transcript of the Commentary submitted by CNN, and they can be considered. This is enough to warrant dismissal, as the Commentary itself defeats PV's claims.

PV attempts to avoid dismissal on the substantive grounds set forth in CNN's motion through distraction, making much ado about two ancillary matters: claiming CNN "affirmatively misrepresent[ed] the record" by referencing public, generally available news stories about PV, and asserting

PV was banned for stating the "truth" when it alleges CNN stated the ban was for issuing "lies." (Resp. at 7-8, 17-20.) Neither complaint has merit.

First, the news stories cited in footnotes 1 and 3 of CNN's brief are relevant to whether PV is a "public figure," an obviously material issue that PV did not allege in its Complaint. As such, they were not submitted for the truth of any matter therein, *as CNN explicitly stated in its opening brief*. (ECF No. 20-1/ "CNN.Br." at 3-4, n. 1 & 3, citing, *inter alia, U.S. ex rel Osheroff v. Humana Inc.*, 776 F.3d 805, 811 n.4 (11th Cir. 2015) (court may take judicial notice of newspaper articles on motion to dismiss "for the limited purpose of determining which statement the documents contain").) In any event, as PV's response does not contest PV is a public figure, the Court need not rely on these articles for dismissal.

Second, PV repeatedly asserts Twitter "punished" it for "publishing too much truth." (Resp. at 1 & 17.) This sort of hyperbole may be grist for the mill of PV's public relations efforts, but it is false. Twitter did not state PV's ban was for "telling the truth." Instead, the ban's stated focus was PV's *conduct*, i.e., "repeated" violations of policies that prohibit "sharing – or threats of sharing . . . private information without consent." (CNN.Br. at 4.) Further, the "primary aim" of the policy cited by Twitter is protecting individuals from "physical harm" and/or entities sharing information with an

"abusive intent, or to harass or encourage others to harass another person." (*Id*. at 4-5 (the "Anti-Doxxing Prohibition").) While PV suggests the text of the Anti-Doxxing Prohibition is irrelevant, Resp. at 7, it does not dispute the policy is cited in its Complaint – and thus relevant for this Motion – or what it says. Further, the nature of the policy is clearly integral to any assessment of PV's claimed reputational damage, i.e., of whether the reputational effect of the Commentary is more or less damaging than the alleged "truth." As this same policy contradicts PV's self-serving characterization that it was banned for "telling too much truth," it is not only relevant, but also controlling. *See Infante v. Bank of Am. Corp.*, 468 Fed. Appx. 918, 921 n.2 (11th Cir. 2012).

## II.   ARGUMENT

PV is well aware of the common burdens attendant to bringing defamation claims, which cannot proceed without identifying a false statement of fact or, at the very least, a defamatory implication. *See Wentz v. Project Veritas*, Case No: 6:17-cv-1164-Orl-18GJK, 2019 WL 1716024, *5 (M.D. Fla. Apr. 16, 2019) (applying Florida law). Despite such awareness, PV repeatedly urges the Court to read into the Commentary what is simply not there, i.e., an affirmative, direct assertion "that Twitter suspended Project Veritas for violating Twitter's policies regarding spreading 'misinformation' . . . ." (Resp. at 12.) PV emphatically asserts Ms. Cabrera's "direct statements

were false," as if that makes it so, but never identifies a specific, verifiable false statement of fact in the Commentary. (*Id.* at 11-12.)[1]

In short, PV's claim is necessarily one of defamation by implication, which PV did not properly plead, as it relies on "'a combination of individual statements which in themselves may not be defamatory,' but which [PV alleges] 'might lead the reader to draw an inference that is damaging to the plaintiff.'" *Biro v. Condé Nast*, 883 F. Supp. 2d 441, 464 (S.D.N.Y. 2012).[2] This distinction becomes important in the Court's actual malice analysis, as

---

[1] PV asserts Ms. Cabrera's statement that PV's ban was "part of a *much broader crackdown . . . on accounts that are promoting misinformation*" "reiterat[ed]" a falsehood. (Resp. at 11.) PV does not identify, however, what is literally false about this comment.

[2] PV cannot make the "especially rigorous showing" for defamation by implication, specifically that CNN "intend[ed] or endors[ed] the inference." *Id.* at 466. While PV summarily asserts its Complaint "more than meets this threshold," Resp. at 11, PV cites to no allegations in its Complaint or language in the Commentary raising a plausible inference that Ms. Cabrera *intended or endorsed* an implication that Twitter suspended PV *for violating policies against misinformation*. Ms. Cabrera did not cite any specific Twitter policy, and comments only on the broader trends into which PV's ban fits. Mr. Stelter then clarified PV "got swept . . . by violating multiple rules," but did not identify the specific policies cited by Twitter. Neither passage "endorses" a message that PV's ban was "for violating Twitter's policies regarding spreading 'misinformation.'" *See Biro*, 883 F. Supp. 2d at 469 ("[T]here is nothing to suggest that [defendant] intended or endorsed the 'strained' reading that [plaintiff] gives the passage to find the defamatory implication."); *Vinas v. Chubb Corp.*, 499 F. Supp. 2d 427, 437 (S.D.N.Y. 2007) ("[Plaintiff] alleges no facts that suggest that [defendant] affirmatively intended to imply [the purported implication].").

5

discussed below. *See Kendall v. Daily News Pub'g Co.*, 716 F.3d 82, 89-90 (3d Cir. 2012) ("We agree with the First, Sixth, Seventh, and Ninth Circuits: plaintiffs in defamation-by-implication cases must show something beyond knowledge of, or recklessness in regard to, the *falsity* of the statement's defamatory meaning."), *cited favorably in Klayman v. City Pages*, 650 Fed. Appx. 744, 749 (11th Cir. 2016). Regardless, the Complaint should be dismissed as the Commentary is substantially true, not materially false, and PV cannot plausibly allege CNN acted with actual malice.

### A.     Substantial Truth And Material Falsity.

As PV does not contest that it is a public figure or that the Commentary addressed a matter of public concern, the First Amendment requires its allegations to meet the higher constitutional standard of "material falsity." (CNN.Br. at 13.) *See also DiBella v. Hopkins*, 403 F.3d 102, 115 (2d Cir. 2005) (predicting New York courts would require "clear and convincing proof" of falsity in public figure cases); *Wolf v. Ramsey*, 253 F. Supp. 2d 1323, 1353 (N.D. Ga. 2003) (Carnes, J.) ("Plaintiff must prove falsity by clear and convincing evidence."). While the analysis of "substantial truth" and "material falsity" are similar, and burdens of proof are generally not considered on a motion to dismiss, this distinction informs the Court's analysis as it provides the controlling standard. *See Brokers' Choice of Am.,*

*Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1109-11 (10th Cir. 2017) (explaining the constitutional requirement of material falsity but declining to consider whether the higher evidentiary burden imposed by the material falsity standard applies on a Rule 12 motion). Regardless, whether or not the constitutional burden-shifting and "clear and convincing" standard apply at this stage, the Commentary is "substantially true" under state law, and PV cannot show the Commentary is "materially false."

First, as explained by CNN in its opening brief, the Commentary is substantially true as written. (CNN.Br. at 14-15.)[3]

Second, even accepting PV's preferred falsity theory, the Court must determine whether "the published statement could have produced no worse

---

[3] The four corners of the Commentary, "as a whole," impart three pieces of information: (1) Twitter banned PV, (2) the ban occurred amid a broader crackdown on sources of misinformation, and (3) PV's ban is an example of this crackdown. The first assertion is undisputed. (Compl. at ¶¶ 27, 32.) PV concedes the second piece of information "was never 'disputed.'" (Resp. at 16.) PV asserts it contests the third piece, but the Complaint did not challenge it or allege Ms. Cabrera subjectively doubted PV's ban was an "example" of a "crackdown" on sources of misinformation. Meanwhile, PV's *actual* theory of falsity, i.e., that Twitter banned PV for violating policies against misinformation, is not supported by the Commentary itself. *See Nichols v. Moore*, 396 F. Supp. 2d 783, 790-92 (E.D. Mich. 2005) (holding, under Michigan law, statement that plaintiff was "arrested in connection to the Oklahoma City bombing" was substantially true and "did not state [] Plaintiff was charged with or accused of participating"). Under such circumstances, the Commentary is "not defamatory because it is true." *Monge v. Madison Cty. Record, Inc.*, 802 F. Supp. 2d 1327, 1333-35 (N.D. Ga. 2011) (Jones, J.).

7

an effect on the mind of a reader than the" pertinent truth. *Guccicone v. Hustler Magazine, Inc.*, 800 F.2d 298, 302 (2d Cir. 1986) (discussing "substantial truth"). Under both New York law and the First Amendment, the Court must compare the Commentary's gist or sting to the alleged "truth" (Twitter's stated basis for the ban) to determine whether the alleged falsity negatively and significantly (not modestly) impacted PV's reputation. *See id.*; *Air Wis. Airlines Corp. Hoeper*, 571 U.S. 237, 250 (2014) (on materiality, "we care whether [the falsehood] affects the subject's reputation . . . .").[4]

Instead of addressing the legal issue at hand, PV insists that being banned "for violating Twitter's policies regarding spreading misinformation" is substantially different than being banned for publishing "personal (true but private) information," because there is a "material difference between

---

[4] As recently explained by the Tenth Circuit, to qualify as materially false: "(1) 'minor inaccuracies' do not count; (2) the episode must be 'likely to cause reasonable [viewers] to think 'significantly less favorably' about the plaintiff[s] than they would if they knew' [the truth]; and (3) if a 'misstatement' from the story caused only 'modest [reputational] harm,' it is not actionable[.]" *Brokers' Choice*, 816 F.3d at 1111 (citations omitted) (citing *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516-517 (1991)); *Bustos v. A&E Television Networks*, 646 F.3d 762, 765 (10th Cir. 2011) (Gorsuch, J.) ("[T]he alleged misstatement must be likely to cause reasonable people to think 'significantly less favorably' about the plaintiff than . . . the truth; [it] is not actionable if the comparative harm to plaintiff's reputation is real but only modest."). *See also Liberty Lobby, Inc. v. Dow Jones & Co.,* 838 F.2d 1287, 1292 (D.C. Cir. 1988) ("Where the question of truth or falsity is a close one, a court should err on the side of nonactionability.").

telling the truth and telling a lie." (Resp. at 12-13.) CNN does not suggest, as PV claims, that the "distinction between telling the truth and telling a lie is 'hair-splitting,'" or that the two are the same thing. (*Id*. at 2.) Regardless, this dichotomy evades the core issue: whether the Commentary is materially false based upon its alleged reputational sting.

Crucially, PV does not contend—much less demonstrate—that being banned for violating a policy explicitly designed to prevent physical harm and harassment is any less disgraceful than violating a policy prohibiting misinformation. (CNN.Br. at 15-18.) PV fails to show the "gist" or "sting" of the Commentary would have any different effect on the average viewer if CNN included *why* Twitter banned PV; and, if so, that the average viewer would think more approvingly of PV if CNN reported PV was banned for violating a policy designed to protect individuals from physical harm and harassment, and not for misinformation (per PV's reading). Indeed, the Commentary has no different effect on the minds of viewers *with* or *without* an exact reproduction of Twitter's stated reason for the ban: at most, the change in the reputational effect from the inclusion would be "modest," but not significant (and not even in PV's favor). *See Guccione*, 800 F.2d at 302 ("The only difference in effect between the two statements worked in Guccione's favor; as printed, the statement merely points out the fact of his

9

adultery, without calling attention to its duration for thirteen of the preceding seventeen years."); *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1228 (7th Cir. 1993) ("Falsehoods that do not harm the plaintiff's reputation more than a full recital of the true facts about him would do are thus not actionable."). *See also Brokers' Choice*, 816 F.3d at 1111.

Being accused of violating a policy aimed at preventing physical harm and harassment is just as, if not more, disgraceful than being accused of (knowingly or unknowingly) spreading misinformation (and even, per PV's theory of falsity, *being banned for violating policies against misinformation*). (CNN.Br. at 16.) While CNN had no duty to include information PV believes to be favorable to it in the Commentary,[5] even if it had, adding the reason for PV's ban would not change the Commentary's reputational sting. (CNN.Br. at 16-18.) As such, PV does not show the Commentary was materially false.

### B. Actual Malice.

PV's response, Resp. at 22-25, also confirms the Complaint cannot plausibly allege CNN acted with the constitutionally required "actual malice." The response confirms PV is a public figure, and therefore the

---

[5] *See, e.g.*, *Corp. Training Unlimited, Inc. v. Nat'l Broad Co., Inc.*, 981 F. Supp. 112, 122 (E.D.N.Y. 1997) ("[T]he First Amendment prohibits 'a rule that holds a media defendant liable . . . because it failed to include additional facts which might have cast plaintiff in a more favorable or balanced light.'").

Complaint must plead facts that, taken as true, plausibly show Ms. Cabrera "actually entertained serious doubts as to the veracity of" the Commentary "or was highly aware . . . [it] was probably false." *Michel*, 816 F.3d at 702-03 (citing *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968)). The response further confirms the linchpin of PV's theory of actual malice is a "gotcha" claim, i.e., that Ms. Cabrera's Tweet allegedly shows she "knew" her Commentary was false. (Resp. at 23-24.) But beyond asking the Court to apply the readily distinguishable and non-binding *Palin v. New York Times* decision,[6] PV fails to adequately defend its theory, or impeach the key defects identified by CNN's opening brief. (CNN.Br. at 20-25.)

Specifically, PV fails to address, contest or rebut that Ms. Cabrera's Tweet is not evidence of actual malice at all, as it does not directly contradict the Commentary. (CNN.Br. at 21-23.)

Indeed, for purposes of assessing actual malice, Eleventh Circuit decisions recognize a crucial distinction between a prior report that *directly* contradicts a later report and reporting that addresses different, but related, points. (*See* CNN.Br. at 23-24.) For example, in *Michel*, the Eleventh Circuit

---

[6] PV suggests *Palin* is the "appellate standard for New York defamation law." (Resp. at 23.) It is not. Actual malice is a high burden imposed by the First Amendment to the U.S. Constitution, and thus the Eleventh Circuit decisions on actual malice are controlling here.

11

refused to find actual malice based on the defendant's prior knowledge of related but ultimately separate facts. *See Michel*, 816 F.3d at 704-06. In *Michel*, the plaintiff alleged, "On October 3, 2014 . . . , the Foundation's president wrote to Defendant, Vincent, '[Michel] is a good friend of the organization and supports our cause but is not a board member.' . . . Yet, in the first paragraph of the Article, Defendants refer to the Foundation as 'his own,' in reference to Pras." *Id.* at 704. While the plaintiff contended this demonstrated a contradiction sufficient to raise an inference of actual malice, the Eleventh Circuit disagreed:

> Even in light of the email from the Foundation's president, there is no indication that the article's characterization of Michel's relationship with the Foundation was fabricated by the defendants, wholly imaginary, based on an unverified anonymous phone call, inherently improbable, or obviously worthy of doubt. *See St. Amant*, 390 U.S. at 732, 88 S. Ct. 1323. . . . ***In short, the allegations presented in this portion of the complaint fail to give rise to a reasonable inference of any of the hallmarks of actual malice.***

*Id.* at 705 (emphasis added). *Accord Donald J. Trump for President, Inc. v. CNN Broad., Inc.*, 500 F. Supp. 3d 1349, 1357-58 (N.D. Ga. 2020) (applying identical principles to distinguish *Palin*). *See also Lovingood v. Discovery Commc'ns, Inc.*, 800 Fed. Appx. 840, 850 (11th Cir. 2020) ("[P]laintiff must point to evidence that the defendant had real, subjective suspicions about the veracity of the statement in question.").

The same outcome is compelled in this case. While Ms. Cabrera's Tweet reported the *reasons* for PV's ban, the Commentary reports a separate trend into which PV's ban fits. PV cannot manufacture actual malice by reading a separate statement into the Commentary that does not exist—i.e., that "Twitter suspended Project Veritas for violating Twitter's policies regarding spreading misinformation," Resp. at 12, in order to create a contradiction. Ms. Cabrera's previous Tweet simply does not show she knowingly fabricated or "entertained serious doubts" about whether PV's ban was an example of a larger "crackdown" by social media companies on sources of misinformation.[7]

Moreover, as PV asserts a defamation-by-implication claim, as discussed above, PV must also plausibly allege facts showing CNN knowingly *intended* the allegedly false inference. *See Kendall*, 716 F.3d at 90 ("[I]n such cases, plaintiffs must show something that establishes defendants' intent to

---

[7] Nowhere does the Complaint allege CNN does not believe PV is actually a source of misinformation—nor could PV so allege, as such an assessment would be constitutionally protected. *See Coral Ridge Ministries Media, Inv. v. Amazon.com, Inc.*, 406 F. Supp. 3d 1258, 1277 (M.D. Ala. 2019). Besides, even if PV advanced that theory of falsity, PV's citation to the Tweet would do little more than challenge the *reliability* of Ms. Cabrera's observation that PV should be counted among the sources of misinformation subject to the broader "crackdown" she identifies, but not whether she subjectively doubted her conclusion. Such an argument impermissibly conflates its falsity argument with establishing Ms. Cabrera "actually entertained serious doubts" about her on-air statements. (*See* CNN Br. at 22-23, citing, *inter alia*, *Turner v. Wells*, 879 F.3d 1254, 1269 (11th Cir. 2018).)

13

communicate the defamatory meaning."), *cited with approval*, *Klayman*, 650 Fed. Appx. at 749. The Complaint, however, alleges no such facts.[8]

Finally, PV's continued insistence that Twitter's stated reason for the ban was a "pretext" further defeats any plausible inference of actual malice. (Compl. at ¶¶ 27-36; Resp. at 6-7.) By vehemently asserting that the Twitter ban was a "pretext" (and that Twitter did not actually suspend PV for any violation of Twitter's privacy policies), PV confirms the motivations behind Twitter's ban are open for debate. Thus, CNN's Commentary (placing the ban in a larger context of social media companies "cracking down" on sources of misinformation) is just "one of a number of possible rational interpretations" of an event "that bristled with ambiguities," precluding any finding of actual malice. *Time, Inc. v. Pape*, 401 U.S. 279, 290 (1971) (publication reflecting

---

[8] PV also cites to its post-broadcast retraction demand and alleged "animosity" as evidence of actual malice (Resp. at 24-25), but such arguments are precluded. *See Hunt v. Liberty Lobby*, 720 F.2d 631, 643 n.19 (11th Cir. 1983) (holding a failure to retract does not support actual malice); *Dunn v. Air Line Pilots Ass'n*, 193 F.3d 1185, 1198 n.17 (11th Cir. 1999) (author's motives "play[] no role in determining … 'actual malice'"); *Trump*, 500 F. Supp. 3d at 1357 ("The Supreme Court has emphasized 'that the actual malice standard is not satisfied merely through a showing of ill will or 'malice' in the ordinary sense of the term.'"). PV's citation to *DiLorenzo v. New York News, Inc.* is in sufficient to overcome such precedents. 78 A.D.2d 669, 673 (N.Y.S.2d 1980) ("We note merely that the retraction in its traditional role is considered some evidence of lack of ill will and can be used to mitigate damages.").

"one of a number of possible rational interpretations" of an event will not support plausible actual malice claim). PV has no answer on this point.

It is telling that PV's brief never mentions – not once – the First Amendment. Strict application of the constitutional protections afforded by the actual malice test, however, is necessary when, as here, the Complaint is so clearly a "gotcha" lawsuit designed both for publicity reasons and for its intended "chilling effect." As stated by the Eleventh Circuit in *Michel*:

> [T]here is a powerful interest in ensuring that free speech is not unduly burdened by the necessity of defending against expensive yet groundless litigation. . . . Forcing publishers to defend inappropriate suits through expensive discovery proceedings in all cases would constrict that breathing space in exactly the manner the actual malice standard was intended to prevent. The costs and efforts required to defend a lawsuit through that stage of litigation could chill free speech nearly as effectively as the absence of the actual malice standard altogether.

816 F.3d at 702. The Complaint should be dismissed.

## CONCLUSION

The Motion to Dismiss should be GRANTED WITH PREJUDICE.

Respectfully submitted this 29th day of July, 2021.

*/s/ Eric P. Schroeder*

**BRYAN CAVE LEIGHTON PAISNER LLP**
Eric P. Schroeder (Ga. Bar 629880)
Brian M. Underwood, Jr. (Ga. Bar 804091)
One Atlantic Center, 14th Floor

1201 West Peachtree Street, NW
Atlanta, Georgia 30309
Telephone:   404-572-6600
Facsimile:   404-572-6999
eric.schroeder@bclplaw.com
brian.underwood@bclplaw.com

*Counsel for Defendant CNN*

## **Local Rule 7.1(D) Certification of Compliance**

I hereby certify that the foregoing pleading has been prepared with Century Schoolbook font, 13 point, one of the font and point selections approved by the Court in L.R. 5.1, N.D. Ga.

This 29th day of July, 2021.

>  */s/Eric P. Schroeder*
> Eric P. Schroeder
> Ga. Bar 629880

## **CERTIFICATE OF SERVICE**

I hereby certify that, on this date, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send email notification of such filing to all counsel of record.

This 29th day of June, 2021.

> */s/Eric P. Schroeder*
> Eric P. Schroeder
> Ga. Bar 629880