**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

PROJECT VERITAS,

    **Plaintiff,**

**v.**

CABLE NEWS NETWORK, INC.,

    **Defendant.**

CIVIL ACTION FILE

No. 1:21-CV-01722-SCJ

## ORDER

    This matter appears before the Court on the Motion to Dismiss filed by Defendant Cable News Network, Inc. Doc. No. [20].[1]

## I.    BACKGROUND

    On April 26, 2021, Plaintiff Project Veritas ("Project Veritas") filed this action for damages against Defendant Cable News Network, Inc. ("CNN"). Doc. No. [1]. In its Complaint, Project Veritas asserts a cause of action for defamation.

---

[1] All citations are to the electronic docket unless otherwise noted, and all page numbers are those imprinted by the Court's docketing software.

Id. at 14. The following facts are taken from the Complaint and in accordance with applicable law, accepted as true for purposes of the pending Motion.

Project Veritas describes itself as "investigative journalism organization" that "investigates and exposes corruption, dishonesty . . . and other misconduct" with the goal of "enhancing ethical conduct and institutional transparency in American society." Id. ¶ 3, 20–21.

On February 11, 2021, CNN employee, Ana Cabrera posted on her Twitter[2] account that Twitter had permanently banned Project Veritas for "repeated violations of Twitter's policies prohibiting the sharing—or threats of sharing—of other people's private information without consent." Id. ¶ 2. The Twitter ban stemmed from a video that Project Veritas posted on its account that showed Project Veritas reporters seeking to interview Facebook Vice President, Guy Rosen, outside a residence. Id. ¶¶ 4, 26–27. The video also showed the house number of the residence. Id. ¶ 27.

Also on February 11, 2021 (in addition to the Cabrera post), CNN reported in an article by Brian Fung that "Project Veritas was permanently banned from

---

[2] Twitter is a social media platform. See generally NetChoice, LLC v. Moody, 546 F. Supp. 3d 1082, 1085 (N.D. Fla. 2021).

Twitter for . . . a video/tweet that violated 'the platform's policies prohibiting sharing—or threats of sharing—other people's private information without consent.'" Id. ¶¶ 6, 43 (citing Brian Fung, "Twitter permanently bans Project Veritas account," CNN.COM (February 11, 2021), https://www.cnn. com/2021/02/11/tech/twitter-project-veritas/index.html;     Ana     Cabrera (@AnaCabrera),     Twitter     (February     11,     2021),     https://twitter.com /anacabrera/status/1359977301312761857?lang=en).

Subsequently, on February 15, 2021, during an on-air discussion between Cabrera and CNN reporter Brian Stelter, Cabrera stated the following concerning Project Veritas's Twitter ban:

> We're starting to see companies cracking down to try to stop the spread of misinformation and to hold some people who are spreading it accountable, Brian. For example, Twitter has suspended the account of Project Veritas, a conservative activist, uh, activist organization. At least that how they couch themselves with followers . . . But this is part of a much broader crackdown, as we mentioned, by social media giants that are promoting misinformation.

Id. ¶ 39 (emphasis omitted).[3]

––––––––––––––––––––

[3] The quote in CNN's brief is slightly different than the one in the Complaint. The quote in the brief is as follows:

In response, Stelter stated: "Uh, yes . . . Project Veritas, a very controversial conservative group, uh, got swept up in a Twitter policy by violating multiple rules on the site." <u>Id.</u> ¶ 40 (emphasis omitted).[4]

Following the broadcast, Project Veritas's general counsel contacted general counsel for CNN, as well as CNN employees Cabrera, Stelter, and Fung, objecting to the broadcast's commentary regarding the reason behind the ban. <u>Id.</u> ¶ 45. Project Veritas states that "CNN had no basis for claiming Project Veritas was banned for 'promoting misinformation.'" <u>Id.</u> ¶ 42. Project Veritas demanded a correction and retraction, to which CNN declined. <u>Id.</u> ¶¶ 45, 46.

---

> CABRERA: And of course social media plays such a huge role here. We're starting to see companies crack down to try to stop the spread of misinformation and to hold some people who are spreading accountable, Brian. For example Twitter has suspended the account of Project Veritas, a conservative activist organization, at least that's how they couch themselves with followers including Donald Trump Jr., Eric Trump, but this is part of a much broader crackdown as we mentioned by social media giants on accounts that are promoting misinformation.

Doc. No. [20-1], 6.

[4] Project Veritas further states: "Ana Cabrera and Brian Stelter are CNN employees, and CNN is responsible for the acts and omissions of its employees made in the course of their employment duties through the principle of respondeat superior." Doc. No. [1], ¶ 41.

4

Project Veritas now brings this action alleging one count of defamation. Doc. No. [1]. Specifically, Project Veritas asserts that CNN "published false statements to multiple third parties stating that Project Veritas was banned from Twitter for 'promoting misinformation.'" Id. ¶ 48. Project Veritas asserts that "CNN's statements are provably false, because Twitter stated its claimed reason for banning Project Veritas was because Project Veritas truthfully published supposed 'private information.'" Id. ¶ 49.

In response to Project Veritas's Complaint, CNN filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. Doc. No. [20].[5] Following the filing of CNN's

---

[5] Defendant CNN attached several documents to its motion: Exhibit 1 (Twitter's Private information policy dated March 2019); Exhibit 2 (Ana Cabrera's February 11, 2021 tweet that is referenced in paragraph 6 of the Complaint); Exhibit 3 (the CNN transcript for a segment of "CNN Newsroom" which aired on February 14, 2021); and Exhibit 4 (a video segment of "CNN Newsroom" which aired on February 14, 2021). The Court notes that the Complaint alleges a February 15, 2021 airing date. It is not clear to the Court why the dates do not match. The Court also notes that Exhibit 3 (the transcript) is incomplete in that the bottom of page 8 appears to have been misprinted and does not contain Cabrera's full statement (as compared to the relevant language in the Complaint, briefing, and video exhibit attached to the Motion to Dismiss as Exhibit 4). Accordingly, the Court gives no consideration to Exhibit 3. The Court has, however, considered Exhibits 1, 2, and 4 because there appears to be no dispute as to authenticity and said documents are central to Project Veritas's claim. See Maxcess, Inc. v. Lucent Techs., Inc., 433 F.3d 1337, 1340 n.3 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is

Motion, Project Veritas filed a response in opposition and CNN replied. Doc. Nos. [22]; [26]. This matter is now ripe for review.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Pleadings do not require any particular technical form. Fed. R. Civ. P. (8)(d)(1). However, labels, conclusions, and formulaic recitations of the elements of the case of action "will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

---

undisputed in terms of authenticity."); see also Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005) (discussing authenticity, undisputed, and centrality requirements for consideration of exhibits attached to a motion to dismiss). The Court is unable to uphold Project Veritas's arguments in opposition as to the exhibits at issue. In particular, Exhibit 1, the Twitter privacy policy, was referenced in the Complaint as the initially reported basis for Project Veritas's ban from Twitter and the policy is also referenced in the Complaint in regard to Project Veritas's claim that its journalistic integrity and reputation are impugned by an allegation that it was banned from Twitter for spreading misinformation as compared to an allegation that it was banned from Twitter for violating a Twitter policy that prohibits the sharing of private information. Doc. No. [1], ¶¶ 2, 49; see also Lockwood v. Beasley, 211 F. App'x 873, 877 (11th Cir. 2006) (noting that in determining whether a document is central to a plaintiff's case, the Eleventh Circuit has "considered whether the plaintiff would have to offer the document to prove his case" and also stating that "[a] document is undisputed if its authenticity is not challenged."). The Court makes no finding as to whether Project Veritas actually violated a Twitter policy, but does consider the Twitter policies for purposes of the reputation claims.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6).

"To decide whether a complaint survives a motion to dismiss, [courts] use a two-step framework." <u>McCullough v. Finley</u>, 907 F.3d 1324, 1333 (11th Cir. 2018). First, the court identifies "the allegations that are 'no more than conclusions," [as] [c]onclusory allegations are not entitled to the assumption of truth. <u>Id.</u> (citations omitted). "Second, after disregarding conclusory allegations, [the Court] assume[s] any remaining factual allegations are true, [identifies the elements that the plaintiff must plead to state a claim] and determine[s] whether those factual allegations 'plausibly give rise to an entitlement to relief.'" <u>Id.</u>; <u>see also</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 675 (2009) (beginning the 12(b)(6) analysis "by taking note of the elements a plaintiff must plead to state a claim . . . .") and <u>Speaker v. U.S. Dep't. of Health & Human Servs. Ctrs. for Disease Control & Prevention</u>, 623 F.3d 1371, 1379 (11th Cir. 2010) ("In ruling on a 12(b)(6) motion, the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff.") and Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").

7

A complaint will be dismissed for failure to state a claim only if the facts as pled do not state a claim that is plausible on its face. Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555–56. In order to state a plausible claim, a plaintiff need only plead "factual content that allows the court to draw the reasonable inference" that the defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678. "Asking for plausible grounds . . . does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the claim. Twombly, 550 U.S. at 556. A complaint "requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements." Id. at 545. Although Rule 8(a)(2) does not require a complaint to contain "'detailed factual allegations,'" the Rule does, however, demand "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 545).

The Eleventh Circuit has also stated that "application of the plausibility pleading standard makes particular sense when examining public figure defamation suits [because] [i]n these cases, there is a powerful interest in ensuring that free speech is not unduly burdened by the necessity of defending

against expensive yet groundless litigation." Michel v. NYP Holdings, Inc., 816 F.3d 686, 702 (11th Cir. 2016).

## III.   ANALYSIS

### A.   Choice of Law

As this Court is exercising jurisdiction based on diversity of citizenship, 28 U.S.C. § 1332, the Court must apply the choice of law rules of the forum state, here, the State of Georgia, "to determine which substantive law governs the action." U.S. Fid. & Guar. Co. v. Liberty Surplus Ins. Corp., 550 F.3d 1031, 1033 (11th Cir. 2008). Georgia follows the doctrine of *lex loci delicti*, which provides that a tort action is governed by the substantive law of the state where the tort was committed. Dowis v. Mud Slingers, Inc., 279 Ga. 808, 809, 621 S.E.2d 413, 414 (2005). While it does not appear that there are any reported cases from Georgia's appellate courts applying the doctrine of *lex loci delicti* in a multistate defamation context, at least two district courts sitting in Georgia have applied the doctrine.[6] See Donald J. Trump for President, Inc. v. CNN Broad., Inc., 500 F. Supp. 3d 1349,

---

[6]  The term "multistate defamation" refers to "situations where a defamatory statement in an aggregate communication is published to persons other than the person defamed in two or more states." Restatement (Second) of Conflict of Laws § 150 (Am. L. Inst. 1971).

1354 (N.D. Ga. 2020); <u>Adventure Outdoors, Inc. v. Bloomberg</u>, No. 1:06-cv-2897-JOF, 2007 WL 9735875, at *3 (N.D. Ga. Dec. 18, 2007). This Court adopts the reasoning of said cases and holds that the "place of the wrong is not where the allegedly defamatory statement was issued but rather where [p]laintiff was injured, that is, its domicile." <u>Donald J. Trump for President, Inc.</u>, 500 F. Supp. 3d at 1354.

A corporation, like Project Veritas, is domiciled in its "place of incorporation and principal of business." <u>Daimler AG v. Bauman</u>, 571 U.S. 117, 137 (2014). Project Veritas's place of incorporation is Virginia and its principal place of business is New York.  Doc. No. [1], ¶ 16. Neither party has argued that New York law should not apply to this cause of action. <u>See</u> Doc. Nos. [20-1], 9; [22], 10). And the alleged injury, i.e., the harm to Project Veritas's reputation "is more principally felt where it has its ongoing operations, as opposed to where it is incorporated." <u>Donald J. Trump for President, Inc.</u>, 500 F. Supp. 3d at 1354. Thus, under the doctrine of *lex loci delicti*, the law of New York applies to Project Veritas's defamation claim. <u>See also</u> <u>Jacoby v. Cable News Network, Inc.</u>, No. 21-12030, 2021 WL 5858569, at *3 (11th Cir. Dec. 10, 2021) ("Defamation and defamation by implication are state causes of action.").

10

### B.   Elements of Defamation

"Defamation is 'the making of a false statement which tends to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society.'" Stepanov v. Dow Jones & Co., 120 A.D.3d 28, 34, 987 N.Y.S.2d 37, 41 (2014) (citations omitted). To sustain a cause of action for defamation under New York law, a plaintiff must plead five elements: "(1) a written defamatory statement of and concerning the plaintiff; (2) publication to a third party; (3) fault; (4) falsity of the defamatory statement; and (5) special damages or per se actionability." Palin v. New York Times Co., 940 F.3d 804, 809 (2d Cir. 2019).

When applying state defamation law to public figures, the First Amendment imposes additional limitations." Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc., 6 F.4th 1247, 1252 (11th Cir. 2021).[7] "First, the alleged defamatory statement must be 'sufficiently factual to be susceptible of being

_____

[7] In its briefing, Project Veritas concedes that it is a public figure. Doc. No. [22], 11. Because Project Veritas does not contest that it is a public figure, the Court has not relied on (or taken judicial notice of) the articles referenced in footnotes 1 and 3 of CNN's brief. Doc. No. [26], 3.

proved true or false.'" Id. (citing Milkovich v. Lorain J. Co., 497 U.S. 1, 21 (1990)). "Second, the statement must be actually false." Id. "And third, a public-figure plaintiff must prove that the defendant made the alleged defamatory statement with 'actual malice' — 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" Id. (citing New York Times Co. v. Sullivan, 376 U.S. 254 (1964)).

### C.   Type of Defamation at Issue

As an initial matter, the Court must consider whether the Project Veritas's Complaint is premised on defamation by direct statements or defamation by implication, as asserted by Defendant CNN in its Motion to Dismiss. Doc. No. [20-1], 11; see Celle v. Filipino Rep. Enters. Inc., 209 F.3d 163, 177 (2d Cir. 2000) ("Whether particular words are defamatory presents a legal question to be resolved by the court[s] in the first instance.") (citations omitted); see also Turner v. Wells, 879 F.3d 1254, 1269 (11th Cir. 2018) ("Whether the defendant's statements constitute defamation by implication is a question [of] law for the court to determine.").

Under New York law, defamation by implication "is premised not on direct statements but on false suggestions, impressions and implications arising

12

from otherwise truthful statements." <u>Armstrong v. Simon & Schuster</u>, 85 N.Y.2d 373, 381, 649 N.E.2d 825 (1995).

CNN asserts that the Complaint does not identify a direct, false statement of fact but instead "combines several sentences" to interpret the statements of CNN's anchors as implying that Project Veritas was banned from Twitter for spreading misinformation. Doc. No. [20-1], 11.

In opposition, Project Veritas asserts that CNN's implication argument is false and irrelevant because Project Veritas is alleging that statements made by Cabrera are "directly defamatory." Doc. No. [22], 10 (emphasis omitted). More specifically, Project Veritas focuses on the following three sentences excerpted from Cabrera's broadcast: (1) that social media companies were "cracking down to stop the spread of misinformation and to hold some people who are spreading it accountable"; (2) "For example, Twitter has suspended the account of Project Veritas . . . ."; and (3) "This is part of a much broader crackdown as we mentioned by social media giants on accounts that are promoting misinformation." Doc. No. [22], 12 (citing Doc. No. [1], ¶ 39) (emphasis omitted).

Because each of the above statements could be proven to be literally true in isolation, but plausibly defamatory when read as a whole, the Court finds that

13

this case is not one of express defamation, but one of defamation by implication. As stated by the Second Circuit, "in certain circumstances even a technically true statement can be so constructed as to carry a false and defamatory meaning by implication or innuendo." Martin v. Hearst Corp., 777 F.3d 546, 552 (2d Cir. 2015). [8] "Where a publication implies something false and defamatory by omitting or strategically juxtaposing key facts, the publication may be actionable even though all of the individual statements are literally true when considered in isolation." Id.

New York has a two-part test related to defamation by implication that "requires proof (1) that the language of the communication as a whole reasonably conveys a defamatory inference, and (2) that such language affirmatively and contextually suggests that the declarant either intended or endorsed the inference." Partridge v. State, 173 A.D.3d 86, 91–92, 100 N.Y.S.3d 730 (2019).

Applying New York law, the Court finds that the Complaint filed by Project Veritas plausibly pleads defamation by implication as a fact-finder could

---

[8] As stated by another court, "[i]n defamation-by-implication cases, the alleged defamatory statement has two possible meanings, one that is defamatory and one that is not. These cases differ from ordinary defamation cases in which the alleged defamatory statement has only a defamatory meaning." Kendall v. Daily News Pub. Co., 716 F.3d 82, 89 (3d Cir. 2013) (citations omitted).

reasonably find that Cabrera's use of the "for example" phrase immediately following the "companies cracking down" on "misinformation" statement creates an implied suggestion that Project Veritas was suspended for spreading misinformation on the Twitter platform. Therefore, read together, the statements could reasonably indicate the Complaint's urged defamatory connotation that Project Veritas was suspended from Twitter for promoting misinformation.

Project Veritas has also made a plausible showing that the plain language of the communication suggests that the inference was intended or endorsed by Cabrera through Project Veritas's showing that the entirety of the CNN segment was focused on the spread of misinformation and the sentence that immediately followed the "for example" sentence at issue again mentions a misinformation crackdown. Doc. No. [22], 12. While Defendant CNN argues that Project Veritas's showing is essentially cursory, there is some persuasive authority from a New York district court that supports the analysis presented by Project Veritas. See Biro v. Condé Nast, 883 F. Supp. 2d 441, 467, 476 (S.D.N.Y. 2012) (indicating in the context of a hypothetical that "an article that linked . . . key statements together, with the obvious (albeit unstated) insinuation that the public figure committed the crimes, would potentially be actionable" and further stating in a

merits analysis that it was "reasonable to conclude that [d]efendants intended [an] inference to be drawn" just by review of the way the "challenged passage" was written).

### D.   <u>Merits of CNN's Motion to Dismiss</u>

Having determined the type of defamation at issue, the Court now turns to the merits of CNN's Motion to Dismiss. Defendant CNN presents two independent arguments in its Motion to Dismiss: (1) the allegedly defamatory statements were substantially true and not materially false, and thus, Project Veritas cannot sustain the falsity element required under New York defamation law; and (2) the Complaint filed by Project Veritas fails to plausibly allege that CNN acted with the constitutionally required actual malice. Doc. No. [20], 1–2. The Court addresses each of CNN's arguments in turn.

#### 1.   *Substantial Truth and Falsity*

CNN argues that the alleged defamatory statements are non-actionable because they are: substantially true (under New York law) and not materially false (under federal constitutional law). Doc. No. [20], 2, ¶ 1.

"'Substantial truth' is the standard by which New York law, and the law of most other jurisdictions, determines an allegedly defamatory statement to be

16

true or false."[9] <u>Tannerite Sports, LLC v. NBCUniversal News Grp.</u>, 864 F.3d 236, 242 (2d Cir. 2017).[10] "[A] statement is substantially true if the statement would not have a different effect on the mind of the reader from that which the pleaded truth would have produced." <u>Id.</u> (citations omitted). "Indeed, it is well settled in New York 'that an alleged libel is not actionable if the published statement could have produced no worse an effect on the mind of a reader than the truth pertinent to the allegation.'" <u>Franklin v. Daily Holdings, Inc.</u>, 135 A.D.3d 87, 94, 21 N.Y.S.3d 6 (2015) (citations omitted). "Courts typically compare the

---

[9] There is some case law that indicates that substantial truth is an affirmative defense and other case law that indicates that substantial truth is an element of a defamation cause of action. <u>See</u> <u>Tannerite Sports, LLC v. NBCUniversal News Grp.</u>, 864 F.3d 236, 247 (2d Cir. 2017). For purposes of the case *sub judice*, it is not necessary to specify whether the Court considers substantial truth an element of the defamation cause of action or an affirmative defense, because the Eleventh Circuit permits consideration of affirmative defenses in the Rule 12(b)(6) motion context so long as the affirmative defense appears on the face of the Complaint. <u>Quiller v. Barclays Am./Credit, Inc.</u>, 727 F.2d 1067, 1069 (11th Cir. 1984), <u>on reh'g</u>, 764 F.2d 1400 (11th Cir. 1985). Here, the affirmative defense appears on the face of the Complaint and the Court proceeds with the 12(b)(6) merits consideration.

[10] The standard appears to be the same or similar across the jurisdictions. For example, the Seventh Circuit Court of Appeals has stated: "[t]he rule of substantial truth is based on a recognition that falsehoods which do no incremental damage to the plaintiff's reputation do not injure the only interest that the law of defamation protects." <u>Haynes v. Alfred A. Knopf, Inc.</u>, 8 F.3d 1222, 1228 (7th Cir. 1993) (emphasis omitted). "A news report that contains a false statement is actionable 'only when 'significantly greater opprobrium' results from the report containing the falsehood than would result from the report without the falsehood.'" <u>Id.</u> (citations omitted).

17

complained of language with the alleged truth to determine whether the truth would have a different effect on the mind of the average reader." <u>Id.</u>; <u>see also</u> <u>Miller v. J.-News</u>, 211 A.D.2d 626, 627, 620 N.Y.S.2d 500 (1995) ("under New York law the 'accuracy of the report should be assessed on the publication as a whole, not isolated portions of it.'") (citations omitted).[11]

The Court will now engage in the comparison referenced in the New York case law for the case *sub judice*. The comparison of the implicated language set forth in Project Veritas's Complaint and the pleaded falsity is essentially as follows: "Twitter has suspended the account of Project Veritas for violating a policy that prohibits the **sharing or threat of sharing of private information**" <u>as compared to</u> "Twitter has suspended the account of Project Veritas for violating a policy that prohibits the **spreading or promoting of misinformation**" (quotations and emphasis provided by the Court).

---

[11] The Court recognizes that the Eleventh Circuit has stated that "the actual truth or falsity of a statement seems to be quintessentially a question of fact that ought not to be determined on a motion to dismiss absent some extraordinary factor . . . ." <u>Michel</u>, 816 F.3d at 707. However, in applying the above-stated New York substantial truth standard to the case *sub judice*, this Court is not determining actual truth or empirical fact. The Court is only determining the plausibility of whether the truth as pled in the Complaint would have had a different effect on the minds of the average reader.

While Project Veritas asserts that CNN's statements implying that Project Veritas was banned from Twitter for spreading misinformation maligns its "journalistic integrity," (see Doc. No. [1], ¶ 44), the pleaded truth of being accused of violating a policy aimed at "protect[ing] individuals from coming to physical harm as a result of their information being shared"[12] similarly maligns a journalist's professional reputation. In essence, "[s]ubstitute the true for the false . . . and the damage to [plaintiff's] reputation would be no less." Haynes v. Alfred A. Knopf, Inc., 8 F.3d 1222, 1228 (7th Cir. 1993). Furthermore, while there is some difference between violating a policy by providing incorrect or misleading information and violating a policy by truthfully providing someone's private information (and potentially exposing a person to harm), the distinction is not enough to make the statement at issue actionable as both violations are similarly damaging to the journalist's reputation. Project Veritas's allegations and arguments do not plausibly suggest that the truth (as pled in the Complaint) would have a different effect on the mind of the average reader in terms of the reputational harm.

_____

[12] This quote is excerpted from the Twitter "Private information policy" exhibit. Doc. No. [20-2], 6.

This conclusion aligns with persuasive authority. For example, "[t]he Sixth Circuit recognized that there's some difference between being a suspected participant in a heinous bombing and being a material witness in the investigation. But, the court held, the distinction to the respectable community member wasn't significant enough to make the misstatement actionable." Bustos v. A & E Television Networks, 646 F.3d 762, 768 (10th Cir. 2011) (discussing Nichols v. Moore, 477 F.3d 396, 398, 401 (6th Cir. 2007)).

Under New York law, "[i]f an allegedly defamatory statement is 'substantially true,' a claim of libel is 'legally insufficient and . . . should [be] dismissed.'" Biro, 883 F. Supp. 2d at 458 (citations omitted); see also Love v. William Morrow & Co., 193 A.D.2d 586, 587, 597 N.Y.S.2d 424, 426 (1993) ("Provided that the defamatory material on which the action is based is substantially true (minor inaccuracies are acceptable), the claim to recover damages for libel must fail.").[13]

_____

[13] The Court recognizes the authority cited by Project Veritas in its briefing that discusses substantial truth being different from "half-truths" and inaccurate information. Doc. No. [22], 15 (citing Agbimson v. Handy, No. 17CV9252, 2019 WL 3817207 at *5 (S.D.N.Y. Aug. 14, 2019); Boehner v. Heise, 734 F. Supp. 2d 389, 399 (S.D.N.Y. 2010)). The Court notes that the district court's ruling in Agbimson case is based on language from the Boehner case in which the district court held that a letter

This same analysis applies to Defendant CNN's material falsity arguments based upon federal law. See Air Wisconsin Airlines Corp. v. Hoeper, 571 U.S. 237, 251 (2014) ("[A] materially false statement is generally one that 'would have a different effect on the mind of the reader [or listener] from that which the . . . truth would have produced.'") (cleaned up).

The Court recognizes that in its briefing, Project Veritas made a number of policy and other arguments (concerning a media outlet's ethical responsibilities and the requirement for public trust of the media) in an effort to defeat the pending Motion to Dismiss. However, without more, the Court is unable to uphold Project Veritas's policy arguments, as the Supreme Court has recognized that there can be times when alleged false speech is insulated from liability. See,

_____

containing "elements of truth," but also "inaccurate information" could not be characterized as substantially true. Boehner, 734 F. Supp. 2d at 399. The Boehner court provided no citation of law for this particular statement. However, prior to making this statement, the Boehner court quoted the New York case law (quoted supra in this Court's Order), i.e., that truth may be relied upon as a defense "even if the published statements are not literally true, or if there are minor inaccuracies, so long as the publication is 'substantially true.'" Id. at 398. The Boehner court also quoted the "mind of the reader," test, but its application in the court's analysis is not clear. Id. at 399. Accordingly, without more, this Court declines to adopt the persuasive authority of the Boehner district court case and its progeny, Agbimson. The Court will instead apply the "minor inaccuracies are acceptable" authority found in New York's appellate jurisprudence as discussed, supra.

e.g., Philadelphia Newspapers, Inc. v. Hepps, 475 U.S. 767, 778 (1986) ("[t]o provide 'breathing space,' for true speech on matters of public concern, the Court has been willing to insulate even demonstrably false speech from liability . . . .").[14]

### 2.   *Actual Malice*

As stated above, in its Motion to Dismiss, CNN further argues that Project Veritas's Complaint must be dismissed because Project Veritas fails to plausibly allege actual malice, as required for public figures.

In response, Project Veritas concedes that it is a public figure, but asserts that it has plausibly pled actual malice through the public Tweet made by

---

[14] The Court also recognizes that Defendant CNN and Project Veritas do not agree on admitted, disputed, and undisputed facts. See Doc. Nos. [20-1], 14; [22], 12. Project Veritas also disputes whether it actually violated a Twitter policy. However, the Court has not endeavored to resolve any disputed fact or the merits of whether Project Veritas actually violated a Twitter policy. Resolution of disputed facts is not essential to the present plausibility ruling where the Court accepts the facts alleged in the Complaint as true and the Court has focused on the stated basis of the Twitter ban at issue per paragraph 49 of the Complaint. See Speaker, 623 F.3d at 1379 ("In ruling on a 12(b)(6) motion, the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff.")

Cabrera that occurred four days before the on-air commentary. Doc. No. [22], 11.[15]

Under the Supreme Court's holding in New York Times Company v. Sullivan, 376 U.S. 254, 280 (1964) a public figure plaintiff must prove that an allegedly libelous statement was made with actual malice, that is, made "with knowledge that it was false or with reckless disregard of whether it was false or not." After review, the Court finds that because its substantial truth analysis, supra, is determinative, an actual malice plausibility ruling is not required at this time. As stated above, Project Veritas's Complaint is legally insufficient.

IV.    CONCLUSION

For the above stated reasons, the Motion to Dismiss filed by Defendant Cable News Network, Inc. Doc. No. [20] is **GRANTED**. The Clerk is **DIRECTED** to enter judgment and close this case.

IT IS SO ORDERED this 17th day of March, 2022.

_____
**HONORABLE STEVE C. JONES**
**UNITED STATES DISTRICT JUDGE**

---

[15] "Those who have voluntarily sought and attained influence or prominence in matters of social concern are generally considered public figures." Celle, 209 F.3d at 176. "Whether a plaintiff is a public figure is a question of law for the court." Id.

23